MAX N. TOBIAS, JR., Judge.
_JjThe defendant, David C. Nye, previously convicted of indecent behavior with a juvenile, was charged by bill of information on 4 January 2011, with failing to register as a sex offender, a violation of La. R.S. 15:542. On 11 April 2011, the defendant filed a motion to quash, arguing that the sex offender registration statute was unconstitutional as applied to him, a homeless person. The trial court denied the motion to quash on 13 April 2011, on which date the defendant pleaded guilty as charged under North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) and State v. Crosby, 338 So.2d 584 (La.1976), and, after waiving all delays, was sentenced to serve two years at hard labor. This timely appeal followed.
Louisiana State Police Trooper Andrew Pratt, assigned as a detective to the department’s New Orleans field office, testified at the defendant’s preliminary hearing, that the defendant had previously been convicted of indecent behavior with juveniles. Trooper Pratt testified that, upon the defendant’s release from prison, he “complied with the New Orleans Police Department by confirming that he was a sex offender, and gave the address of 1130 Oretha Castle Haley |2[B oulevard], which is the New Orleans Mission.” Trooper Pratt went to the New Orleans Mission on 20 July 2010, to perform a compliance check on Mr. Nye and learned he had not resided there since 31 May 2010. The detective subsequently prepared an arrest warrant for Mr. Nye, for failing to notify law enforcement of a change in address.
Trooper Pratt confirmed on cross examination that Mr. Nye, after his release from prison on 29 April 2010, completed his initial registration on 6 May 2010, giving an address of 843 Camp Street, a homeless shelter. Trooper Pratt confirmed that Mr. Nye re-registered with the New Orleans Police Department on 26 May 2010, giving the 1130 Oretha Castle Haley Boulevard address, the New Orleans Mission. The detective confirmed that Mr. Nye was arrested on 5 November 2010 on Toulouse Street; Mr. Nye stated that this was his *413 residence. Trooper Pratt denied ever seeing Mr. Nye’s name on a lease for a Toulouse Street residence.
A review of the record reveals one error patent. Neither the sentencing transcript, the minute entry from the date of sentencing, nor the docket master entry from the date of sentencing, reflects that the trial court imposed the restriction that Mr. Nye’s two-year sentence be served without the benefit of parole, probation, or suspension of sentence, as required by La. R.S. 15:542.1.4 A(l). Thus, the sentence is illegally lenient. State v. Fortune, 10-0599, p. 12 (La.App. 4 Cir. 12/22/10), 54 So.3d 761, 768. However, pursuant to La. R.S. 15:801.1 A,[1] and State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790, the lssentence is deemed to have been imposed with the restriction of benefits, even in the absence of the trial court minute entry showing the restrictions. State v. Decloues, 10-1247, p. 9 (La.App. 4 Cir. 3/23/11), 62 So.3d 778, 782, writ denied, 11-0867 (La.2/3/12), 79 So.3d 1022. Thus, this court need not correct the sentence or remand it to be corrected.
In his sole assignment of error Mr. Nye argues that the trial court erred in denying his motion to quash because: (1) his conduct was not criminal because the sex offender registration statute did not contemplate a scenario in which a homeless individual has no physical address to report; and (2) alternatively, even assuming his actions were contemplated by the statute, the language of the statute is vague and thus violates the Due Process clauses of the United States and Louisiana Constitutions because the statute does not put people in the defendant’s position on sufficient notice to understand what conduct is required of them.
Mr. Nye’s motion to quash the indictment was directed to La. R.S. 15:542.1.4, which is the penal provision for the sex offender registry scheme, La. R.S. 15:540, et seq. However, Mr. Nye was actually charged under La. R.S. 15:542 and pleaded guilty to that violation. Nevertheless, his arguments in his |4motion to quash were directed to La. R.S. 15:542 and/or La. R.S. 15:542.1.2, as are his arguments in this appeal.
Generally, a trial court’s ruling on a motion to quash should not be disturbed on review absent an abuse of discretion. State v. Sorden, 09-1416, p. 3 (La.App. 4 Cir. 8/4/10), 45 So.3d 181, 183; State v. Love, 00-3347, p. 12 (La.5/23/03), 847 So.2d 1198, 1208.
The defendant was charged under the statutory scheme, La. R.S. 15:540, et seq., requiring, inter alia, sex offenders, sexually violent predators, and child sexual predators to register with state and local law enforcement agencies. Mr. Nye was charged with, and pleaded guilty to, failing to register as a sex offender as required by La. R.S. 15:542, having been previously convicted of indecent behavior with a juvenile, a violation of La. R.S. 14:81, a “sex offense as defined in R.S. 15:541[ (24) ].” *414 La. R.S. 15:542 A(l)(a). Pursuant to La. R.S. 15:542 B(l) and (2), respectively, he was required to register in person “with the police department of his municipality of residence,” and, if employed, also “with the police department of the municipality where he is employed.”
“Residence” is defined by La. R.S. 15:541(22) as:
[A] dwelling where an offender regularly resides, regardless of the number of days or nights spent there. For those offenders who lack a fixed abode or dwelling, “residence” shall include the area or place where the offender habitually lives, including but not limited to a rural area with no address or a shelter.
La. R.S. 15:542.1.2 imposes a duty on sex offenders required to register under the statutory scheme to appear in person at the police department in the 1 ^municipality of “residence” — “where the offender is currently registered to update information within three business days of establishing a new or additional residence address or of changes in information previously provided” when, inter alia, the offender changes his place of residence or establishes a new or additional residence; has vacated his current address of registration with the intent not to return; or has been absent from his current address for more than thirty consecutive days or an aggregate of thirty days or more per calendar year and is physically present at another address during that same time period.
In the instant case, Mr. Nye complied with his initial registration requirements under La. R.S. 15:542, and he once apparently complied with the update requirements of La. R.S. 15:542.1.2, when his place of “residence” changed from the place of “residence” he had reported when initially registering. He was charged in the bill of information with failing to register as a sex offender as required by La. R.S. 15:542, the initial registration statute, rather than with failing to update the information as to his “residence” as required by La. R.S. 15:542.1.2. He pleaded guilty to violating La. R.S. 15:542.
Mr. Nye first argues that his conduct was not criminal because the statute did not contemplate a scenario in which a homeless individual had no physical address to report. In his motion to quash, the defendant did not directly argue that the indictment should be quashed because it did not contemplate a scenario in which a homeless individual had no physical address to report, independent from the claim that it was unconstitutional. Nevertheless, this argument is made on appeal and we address it.
“Louisiana’s statutory scheme for registration of sex offenders is merely a civil regulatory framework.” State v. Golston, 10-2804, p. 16 (La.7/1/11), 67 6So.3d 452, 463, citing State ex rel. Olivieri v. State, 00-0172 (La.2/21/01), 779 So.2d 735. The rules for statutory construction of Louisiana’s sex offender registration statutes were set forth in Smith v. State, 10-1140, pp. 6-7 (La.1/24/12), 84 So.3d 487, 492, as follows:
The starting point in the interpretation of any statute is the language of the statute itself. Cats’ Meow, Inc. v. City of New Orleans, 98-0601, p. 15 (La.10/20/98), 720 So.2d 1186, 1198; Touchard v. Williams, 617 So.2d 885 (La.1993). Legislation is the solemn expression of legislative will, and therefore, the interpretation of a law involves primarily the search for the legislature’s intent. La. Civ.Code art. 2; Barbara Landry v. Louisiana Citizens Property Ins. Co., 07-1907, p. 20 (La.05/21/08), 983 So.2d 66, 79; Detillier v. Kenner Regional Med. Ctr., 03-3259, p. 3 *415 (La.7/6/04), 877 So.2d 100, 103. La. Civ. Code art. 9 provides that, when a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole, and laws on the same subject matter must be interpreted in reference to each other. La. Rev.Stat. 1:3; La. Civ.Code arts. 12 and 13; Conerly v. State, 97-0871, p. 4 (La.7/8/98), 714 So.2d 709, 711. Where two statutes deal with the same subject matter, they should be harmonized if possible. La. Civ.Code art. 13; Kennedy v. Kennedy, 96-0741, p. 2 (La.11/25/96), 699 So.2d 351, 358 (on rehearing).
La. R.S. 15:542 C(l) requires a sex offender provide upon initial registration, inter alia, “(b) Physical address or addresses of residence.” Similarly, La. R.S. 15:542.1.2 requires that a registered sex offender update his information if he establishes a new or additional physical residential address.
While La. R.S. 15:542 and La. R.S. 15:542.1.2 both require the reporting of the “address” of the offender’s “residence,” the statutory sex offender registry |7scheme also contemplates a homeless person in its registration requirements. More precisely, the statute contemplates that a sex offender will not have a physical address, the narrow issue raised by Mr. Nye in this first argument in his sole assignment of error. La. R.S. 15:541(22), defining the term “residence” for purposes of the statutory scheme, expressly states:
For those offenders who lack a fixed abode or dwelling, “residence” shall include the area or place where the offender habitually lives, including but not limited to a rural area with no address or a shelter. [Emphasis added.]
Thus, reading La. R.S. 15:542’s requirement that a sex offender furnish the physical address of a residence together with the statutory definition of “residence” provided in the statutory sex offender registry scheme, the legislature clearly contemplated that it apply to a homeless person who lacks a fixed abode or dwelling and who habitually lives in an “area or place” “with no address.” By including those provisions in the statutory sex offender registry scheme, the legislature obviously contemplated requiring homeless sex offenders with no physical address to register, at least a homeless sex offender who had an “area or place” where he “habitually” lived, to comply with the registration and notification provisions. Mr. Nye does not argue that he had no “area or place’ where he “habitually” lived at the time of his arrest.
We note that Mr. Nye had twice complied with the provisions of the statutory sex offender registry scheme. Accepting his argument that he was homeless, it is undisputed that he had complied with the sex offender registration | ¿requirements and that he was in compliance with such requirements until he left the New Orleans Mission after 31 May 2010, and failed to update his sex offender registration records or re-register.
Mr. Nye was arrested on 5 November 2010 at an address on Toulouse Street, an address that Trooper Pratt had been told was the defendant’s residence. The preliminary hearing testimony of Trooper Pratt suggests that Mr. Nye likewise had a physical address on Toulouse Street that he could have reported as his physical address at some point between leaving the New Orleans Mission after 31 May 2010 and his November 2010 arrest.
*416 Considering all of the facts and circumstances, we find that the trial court would not have abused its discretion in denying the defendant’s motion to quash insofar it might have been based on the ground that La. R.S. 15:542 did not cover him as written. Mr. Nye’s first argument is without merit.
The defendant’s second argument is that, even if his actions were contemplated by La. R.S. 15:542, the language of the statute was vague at best. He argues that it thus violated the due process clauses of the United States and Louisiana Constitutions because it did not put people in the defendant’s position on sufficient notice to understand what conduct was required of them.
No merit exists to this “void-for-vagueness” claim, given that the statute with which Mr. Nye was charged with violating, La. R.S. 15:542, “is technically insusceptible to a void for vagueness analysis.” See Golston, 10-2804, p. 15, 67 So.3d at 468. In Golston, the trial court declared La. R.S. 15:560, et seq., ^unconstitutionally vague. La. R.S. 15:560, et seq., enacted in 2006, provides for a sex offender assessment and registration scheme whereby Sex Offender Assessment Panels are set up to evaluate all sex offenders prior to their release from incarceration. This “SOAP” statutory scheme also provides for lifetime registration in accordance with the provisions of La. R.S. 15:542, et seq., for a sex offender found to be a sexually violent predator or a child sexual predator.
In reversing the Golston trial court’s declaration that the SOAP statutory scheme was unconstitutionally vague, and thus “void for vagueness,” the Louisiana Supreme Court stated:
We agree with the State that the SOAP statutes are technically insusceptible to a void for vagueness analysis. The “void-for-vagueness” doctrine provides that a criminal statute must meet two requirements to satisfy due process: (1) adequate notice to individuals that certain contemplated conduct is proscribed; and (2) adequate standards for those charged with determining the guilt or innocence of an accused. State v. Turner, 2005-2425 (La.7/10/06), 936 So.2d 89, 99. The purpose of the doctrine is to ensure that “a criminal statute does not contain a standard so vague that the public is uncertain as to the proscribed conduct and the factfinder is unfettered by any legally fixed standards as to what is prohibited by the statute.” Id. at 99-100. In State ex rel. Olivieri v. State, 00-0172 (La.2/21/01), 779 So.2d 735, 745-50, this Court held that retroactive application of “Megan’s Law” (La. R.S. 15:542-542.1.4), requiring registration of sex offenders and public notification, did not impose punishment and therefore did not violate state and federal Ex Post Facto Clauses, even though the failure to comply with the registration and notification requirements is a crime and the offenders must pay the cost of notification. Implicit in our holding was the finding that Louisiana’s statutory scheme for registration of sex offenders is merely a civil regulatory framework. Id. at 747. Similarly, the SOAP statutory scheme contains no prohibition of conduct. The stated purpose of the SOAP statutory scheme is nearly | inidentical to that stated in Louisiana’s sex offense registration scheme analyzed in Olivieri. Thus, the stated purpose of the SOAP scheme, like that found in Olivieri, is non-punitive. We hold the SOAP statutory scheme is not a criminal provision, but rather a regulatory scheme, and thus cannot be unconstitutionally vague. [Emphasis supplied.]
*417 Golston, 10-2804, pp. 15-16, 67 So.3d at 463.
The Golston analysis is applicable in the case at bar. The stated purpose of the entire sex offender registration scheme applicable in the instant case, La. R.S. 15:540, et seq., is non-punitive, even though the failure to comply with the registration and notification requirements is a crime. It is not a criminal provision, but rather a regulatory scheme, and thus it cannot be unconstitutionally vague.
Thus, Mr. Nye’s alternative argument is also without merit.
For the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED.

. La. R.S. 15:301.1 A states:
When a criminal statute requires that all or a portion of a sentence imposed for a violation of that statute be served without benefit of probation, parole, or suspension of sentence, each sentence which is imposed under the provisions of that statute shall be deemed to contain the provisions relating to the service of that sentence without benefit of probation, parole, or suspension of sentence. The failure of a sentencing court to specifically state that all or a portion of the sentence is to be served without benefit of probation, parole, or suspension of sentence shall not in any way affect the statutory requirement that all or a portion of the sentence be served without benefit of probation, parole, or suspension of sentence.